BARRY, Judge.
The New Orleans Sewerage and Water Board [S & WB] and its insurer, Fireman’s Fund Insurance Company, appeal a $5,805.88 judgment resulting from an accident involving a S & WB truck and a taxi cab. The only issue is liability.[1]
Collins Whitty, the driver of a 1976 Ford cab, and his passenger Bernard McGee, filed a tort lawsuit as a result of the accident. Fireman’s Fund answered and reconvened against Whitty alleging his negligence and prayed for indemnity from Whitty if it was held liable to McGee. The defendants’ motion to dismiss (without prejudice) McGee’s claim for failure to cooperate in prosecution of the suit and to comply with discovery was granted.
Officer Kevin Johnson testified that on January 18, 1985 at about 8:55 a.m. he arrived at the scene of an accident involving a cab and a S & WB truck at Louisa St. and North Johnson. The cab and truck were on Louisa (a one way street) heading toward the river. According to Johnson the truck was in the middle of the street and blocked traffic. The S & WB crew was working near the curb, but the officer did not recall seeing a warning sign, flashers or road blocks. He said two parked cars blocked passage on the right side of the truck and the crew was working in the street on the left side.
Johnson testified that the right rear of the S & WB truck and Whitty’s' cab were touching. He did not issue a citation and no injury was noted on his report. Johnson was qualified as an expert in accident investigation and opined that the accident happened because the driver of the cab thought he could pass between the truck and a parked car. His report shows the truck’s speed at zero and the cab’s speed at 5 m.p.h. Johnson stated it was evident the truck was stopped because its crew was working in the street, but conceded he was not present when the accident occurred.
James Randolph, the S & WB truck driver, testified he parked the truck on the left side of Louisa St. so that traffic could pass. The crew positioned barricades two feet behind the truck, but did not block the street. He arrived at the job site to repair the sidewalk about 7:00-7:30 a.m. with a crew of six or seven men.
Randolph stated traffic could pass until a second car parked on the right side of the street. After that his foreman instructed him to move and the foreman told the approaching cab driver (Whitty) to wait until Randolph moved the truck. Randolph got into the truck but did not start the engine.
*1028 Ezell Adams, the S & WB foreman, testified the crew had been at the job site only about fifteen minutes before the accident. He agreed the truck was parked on the left side of Louisa St., truck flashers were on, and a barricade was behind the truck. One car was parked on the right side of the street and a lady in a red Vega (whom Adams knew) parked behind it for a few minutes. He called Emmett Smith, a member of the crew, to, direct traffic. Two small cars passed between the truck and parked cars and then Whitty’s cab approached. He tried to stop Whitty and yelled for the truck driver, Randolph, to move the truck. The cab’s bumper went under the work box on the truck. Adams said Randolph never got into the truck and it never moved.
Emmett Smith, the crew member who was directing traffic around the truck, testified one car had parked on the right side of the street for a while. A second car parked behind for a few minutes and two other small cars passed before the accident. When the cab approached he asked Whitty to wait until the truck could be moved. The cab stopped at first, and as Smith went to tell the truck driver to move, he assumed the cab tried to pass although he did not see it move. Smith did not see the impact, but afterward observed the cab’s bumper underneath the truck. He also claimed the truck’s engine never started.
Collins Whitty testified he picked up Bernard McGee at 330 Piety St. and took Abundance to Louisa St. He said he saw a S & WB truck in the middle of the street with the crew working on the left side. He said there were no barriers and no one was directing traffic. Two cars were in front of Whitty — one went through between the truck and a car parked on the right. Whitty said the second car, a Vega, was in front of his cab and stopped behind the parked car and he could not pass. He was traveling about 15 miles per hour. It was dry and cold. He stopped and blew his horn. One of the S & WB men told the truck driver to move. According to Whitty, the truck moved and hit his cab’s bumper.
Whitty said his bumper went underneath the truck and was torn off. He denied that anyone told him to wait and said he sat still. His car came in contact with the bed of the truck. On impact Whitty was thrown forward, broke his glasses and injured his neck. He saw a doctor and replaced his glasses. Whitty testified the officer did not ask him if he was injured.
The following medical receipts were introduced: Touro Infirmary $10.80; Dr. Warren McKenna $125; Dr. Henry Evans $1,695. It was stipulated that the doctors would have testified based on their reports. The police accident report was also admitted.
The trial court was faced with contradictory testimony. Although the S & WB employees claimed the truck was parked on the left side of the street, the police officer and Whitty testified it was in the middle of the street. The officer stated it was blocking traffic and indicated its position in his report. Whitty claimed the truck moved; the truck driver and the. other S & WB people testified the cab moved. Whitty said he waited for the truck to clear the way, but the others said the cab driver drove into the parked truck when he tried to squeeze through.
The trial court concluded:
The Court’s of the opinion that if it were obvious that Mr. Whittey [sic] were going to attempt to go through this space, it would not have been necessary to move the Sewerage and Water Board truck. I’m convinced that the Sewerage and Water Board truck moved and struck Mr. Whittey [sic].
When asked to rule on Whitty’s comparative negligence, the trial judge said:
No contributory negligence, no comparative negligence. It was up to Sewerage and Water Board to either move that red Vega or instruct the woman to move her car or at that point stop traffic and move the truck. And since Sewerage and Water Board did neither in time to avoid this collision, this property damage, we’re going to find for plaintiff in this instance.
On review we give deference to the factual findings of the trial court, which *1029 should not be disturbed in the absence of manifest error. Where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Deference is due because the trial court has an opportunity to evaluate the witnesses as opposed to an appellate court’s review of a cold record. Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825 (La.1987), quoting Canter v. Koehring Company, 283 So.2d 716 (La.1973).
That deference precludes our determination that the trial court was manifestly erroneous. The judgment is affirmed.
AFFIRMED.

. The trial court stated the eye glasses cost $110.80; the judgment awards $110.88. The record contains a November 30, 1987 judgment awarding a total of $5,805.80 which is stamped PURGED. This appeal is from the December 11, 1987 judgment listing the separate awards which add up to $5,805.88. The briefs make no mention of the eight cent discrepancy.